IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| FREDERICK PHILIP MADRID (a single person), | CASE NO. _____ |
| Plaintiff, | |
| vs. | |
| Lucas Adkins; Kendahl Beecher; Seth Kinney; City of Arlington; Cascade Valley Hospital; Dennis Miller, M.D., Ekaterina Koroleva, P.A.-C; John Doe Cascade Valley Hospital Employees. | **CIVIL RIGHTS COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983; AND UNDER WASHINGTON'S PUBLIC RECORDS ACT, RCW 42.56 *et seq.*** **JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW the plaintiff, by and through his attorneys, Stacey Bennetts and Shannon Marsh of Marsh & Bennetts, PLLC, and alleges as follows:

## I.      INTRODUCTION

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 1

In the early evening of October 24, 2016, Frederic "Fred" Madrid walked to his brother's home at 20705 Anna Lane, Arlington, Washington, to visit and to mourn the recent death of his brother's wife only a couple of weeks earlier. Fred had been drinking because he was upset about the family loss, and stayed on his brother's porch knocking on the door intermittently for a couple hours while waiting for his brother to answer or arrive. At approximately 6:30 p.m. Fred saw a police car approach, a uniformed officer walk toward him.

Only moments earlier, Arlington Police Officer Lucas Adkins was dispatched to 20705 Anna Lane for a "Suspicious" complaint, after Robert Funston had called the police because a man was knocking on the door of a neighbor. Officer Adkins asked Fred what he was doing there, and Fred said he was waiting for his brother and sister. Adkins asked if he had any weapons, to which Fred responded he had a knife. Adkins handcuffed Fred, searched him, and removed the small knife from Fred's waistband. The Officer removed the handcuffs and asked Fred to stay there while he returned to his cruiser to run a warrant check.

Officer Adkins learned from dispatch that Fred had warrants for minor offenses, and also that Marysville Jail was available to book him on the outstanding warrants. Officer Adkins returned to Fred, and escorted him to the police car where he asked Fred to take a Portable Breath Test. Fred declined and Adkins took Fred to Cascade Valley Hospital Emergency Room ("Cascade".)

An Officer Beecher, 20 year old female, arrived on scene to witness the search and arrest and went to Cascade as well. An Officer Kinney arrived at an unknown time, or was possibly with Officer Adkins, but definitely partook in the hospital abuse.

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 2

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
Seattle, Washington  98116
Tel: (206) 683-3466
stacey@marshbennettslaw.com

Approximately a half hour after Adkins first contacted Fred, Fred was in the ER at Cascade, without consent, waiver, warrant, or medical need; nor was he too drunk to be booked at Marysville Jail. Nonetheless, within less than one hour, Defendants (except City of Arlington) forcibly strapped Fred to a hospital gurney, and extracted his blood by injecting a needle into his vein which took two tries. The Defendants did not stop there, seconds later, Fred's pants and underwear were stripped, the officers held down his limbs though he was already restrained, and without local anesthesia, the female PA forcibly inserted a pencil-sized tube (catheter) into Fred's penis (urethra) and past his prostate to drain his bladder. Fred distinctly recalls Officer Adkins laughing at him in a malicious and outrageous manner while he writhed in pain when.

Fred was in shock when he was immediately forced onto the gurney and many hands forced him down and locked him down with straps. Fred continued to voice concern as the nurse did what the officers said and took his blood without his permission. The hospital staff had him strapped tight and monitored him with other instruments before someone removed his pants and underwear. Then Fred felt white-hot pain like he had never imagined before in his most private and sensitive body area—his genitalia. Fred was only released and booked into Marysville Jail after the blood test came back showing he was drunk and the urine test for drugs showed no drugs whatsoever on board.

## II.    PARTIES

2.1    Plaintiff Frederick Philip Madrid, is a single person and resident of Snohomish County, Washington.

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 3

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON 98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

2.2     Defendant Lucas A. Adkins, as an individual, and possibly in his marital status, and in his professional capacity as a police officer employed by the City of Arlington working under color of law and within the course and scope of his employment at all times herein.

2.3     Defendant Kendahl Beecher as an individual, and possibly in her marital status, and in her professional capacity as a police officer employed by the City of Arlington working under color of law and within the course and scope of her employment at all times herein.

2.4     Defendant Seth Kinney as an individual, and possibly in his marital status, and in his professional capacity as a police officer employed by the City of Arlington working under color of law and within the course and scope of his employment at all times herein.

2.5     Defendant Cascade Valley Hospital, duly organized and existing under the laws of the State of Washington, engaged in the business of health care in the State of Washington, with its principal place of business at 330 S. Stillaguamish, Arlington, Snohomish County, Washington.

2.6     Defendant Ekaterina Koroleva, P.A.-C, as an individual, and in her professional capacity as an employee of Cascade Valley Hospital, working under color of law and within the course and scope of her employment at all times herein.

2.7     Defendant Dennis Miller, M.D., as an individual and in his professional capacity as an employee of Cascade Valley Hospital working under color of law and within the course and scope of his employment at all times herein.

2.8     Defendants John Doe currently unnamed individuals, and in his/her professional capacity as employees of Cascade Valley Hospital on October 24, 2016, treating Fred Madrid

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

working under color of law and within the course and scope of their employment at all times herein.

### III.   JURISDICTION

3.1    This action is brought pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiff's constitutional rights.

3.2    This Court has jurisdiction for Plaintiff's constitutional claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction for his state law claims pursuant to 28 U.S.C. § 1367.

3.3    Federal question jurisdiction is invoked on the 42 U.S.C. § 1983 claim, violations of federal patient law.

3.4    Venue is proper in the Western District of Washington under 28 U.S.C. § 1391 as the events giving rise to the claims alleged here occurred in the Western District of Washington.

### IV.   FACTUAL ALLEGATIONS

4.1    On the evening of October 24, 2016, Frederic "Fred or Fred" Philip Madrid, walked to his brother's home at 20705 Anna Lane, Arlington, Washington, to visit and to mourn the recent death of his brother's wife.

4.2    Fred had been drinking because he was upset about the family loss and stayed on his brother's porch knocking on the door intermittently while waiting for his brother to answer or arrive.

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 5

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

4.3     Fred arrived on foot; he did not own a car, and he did not drive a car. He is a small man, approximately 5' 8" and 170 lbs., and appears brown in skin tone as he is part Latino and part Phillipino.

4.4.    According to Arlington Police Officer Lucas Adkins' Initial Case Report #2016-00022959 ("Adkins' Report"), on October 24, 2016, he was dispatched to 20705 Anna Lane for a "Suspicious" complaint wherein a neighbor determined a man was at a nearby home when nobody was supposed to be there.

4.5     At approximately 6:30 p.m., Officer Adkins drove up to the house in question in a marked police vehicle wearing his police uniform, approached Fred and asked what he was doing and if he belonged there.

4.6     Fred said that he was waiting for his girl to answer. Officer Adkins described Fred in his Report as: "extremely agitated with me. He starred [sic] right through me and his eyebrows were furrowed. The male also reeked of alcohol and his speech was slurred." The officer again demanded who he was there to meet and Fred again replied his brother's wife.

4.7     Officer Adkins' Report said Fred "was also wearing baggy clothing with several large bulges in it," so he asked if Fred carried any weapons, to which Fred stated he did have a knife. Officer Adkins frisked Fred and reported he "became extremely stiff and rigid. I told the male to relax, bet he did not respond. I then placed him in handcuffs for my safety." Officer Adkins located the small knife.

4.8     Adkins then un-handcuffed Fred "because he had calmed down somewhat," and went to his cruiser and found out from dispatch that Fred had a few warrants for lower-level crimes; dispatch also confirmed Marysville Police Department was available to book Fred then.

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 6

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

4.9     Officer Adkins put Fred in his the patrol car, read him his Miranda Warnings, and asked him to take a Portable Breath Test, which Fred declined.

4.10    Officer Adkins decided that "based on Fred's alcohol intoxication," while knowing Marysville Jail was willing and able to book intoxicated inmates, decided he "had to transport him to Cascade Valley Hospital for a clear to book."

4.11    The main page of the Marysville Jail web site at https://marysvillewa.gov/165/Jail states:

> Jail. The Marysville Police Department Detention Division operates the Marysville Detention Center for the cities of Marysville, Lake Stevens and Arlington . . .  The Detention Center handles a number of tasks and responsibilities, including: — Maintaining courtroom security — Providing inmate booking, release and supervision of inmates — Providing inmate transport to court — Providing medical and psychiatric services — Providing food services for the inmate population — Responsible for the safe operation of the detention center.

4.12    Before Adkins decided to transport Fred to Cascade Valley Hospital to "clear him for booking," Fred had successfully followed several physical and mental commands issued by Officer Adkins.

4.13    In his detailed Report, Officer Adkins did not state he had any trouble understanding Fred, felt threatened or harassed, had to assist Fred to the police car, or that Fred yelled or fought or behaved belligerently prior to arriving at Cascade; neither did Adkins find any paraphernalia while searching Fred.

4.14    At no time did Defendants (excepting City of Arlington) report Fred was in need of immediate medical care, had sustained an injury, or that there was any medical urgency, nor

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

did anyone indicate any medical problem had been adverted by going to Cascade Valley Hospital and requesting warrantless blood and urine extraction.

4.15    At no time did any of Defendant Officers state they contacted a supervisor to determine whether Fred should be booked at Marysville and or taken to Cascade Hospital.

4.16    Arlington Police Department Policy Manual Use of Force Copyright Lexipol, LLC 2016/10/04.    429.5.1 SICK OR INJURED ARRESTEE:

> If an arrestee appears ill or injured, or claims illness or injury, he/she should be medically cleared prior to booking. If the officer has reason to believe the arrestee is feigning injury or illness, the officer should contact a supervisor, who will determine whether medical clearance will be obtained prior to booking.
> If the jail or detention facility refuses to accept custody of an arrestee based on medical screening, the officer should note the name of the facility person refusing to accept custody and the reason for refusal, and should notify a supervisor to determine the appropriate action.
> Arrestees who appear to have a serious medical issue should be transported by ambulance. Officers shall not transport an arrestee to a hospital without a supervisor's approval.

4.17    Officer Adkins forcibly strapped Fred into four-point restraints, and held him down for a warrantless blood draw and a warrantless catheterization, both taken by force and without Fred's consent and without a lawful waiver, and without exigent circumstances.

4.18    Officer Beecher forcibly strapped Fred into four-point restraints, and held him down for a warrantless blood draw and a warrantless catheterization, both taken by force and without Fred's consent and without a lawful waiver, and without exigent circumstances.

4.19    Officer Kinney forcibly strapped Fred into four-point restraints, and held him down for a warrantless blood draw and a warrantless catheterization, both taken by force and without Fred's consent and without a lawful waiver, and without exigent circumstances.

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

4.20    Dr. Dennis Miller forcibly strapped Fred into four-point restraints, and held him down for a warrantless blood draw and a warrantless catheterization, both taken by force and without Fred's consent and without a lawful waiver, and without exigent circumstances.

4.21    Ekaterina Koroleva, P.A., forcibly strapped Fred into four-point restraints, and held him down for a warrantless blood draw and a warrantless catheterization, both taken by force and without Fred's consent and without a lawful waiver, and without exigent circumstances.

4.21    John Doe forcibly strapped Fred into four-point restraints, and held him down for a warrantless blood draw and a warrantless catheterization, both taken by force and without Fred's consent and without a lawful waiver, and without exigent circumstances.

4.22    All Officer Defendants knew or should have known that at no time was Fred driving a vehicle on the evening in question, nor was he a passenger or involved in any accident.

4.23    According to Arlington Police Officer Kendahl Beecher's Initial Case Report #2016-00022959 ("Beecher Report"), a call came from dispatch at about 6:15 p.m. that a man unknown to the neighborhood had been outside 20705 Anna Lane for the past two hours.

4.24    Officer Beecher knew Fred had outstanding warrants when she arrived on scene where she observed Officer Adkins effect a quadrant search of Madrid's person and place him into the patrol car. Beecher reported Fred was verbally aggressive toward Officer Adkins at this time.

4.25    Officer Beecher reported Fred appeared to be under the influence only alcohol, but declined to take a voluntary portable breath test. She did not state she witnessed any

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

indication of drug use or odd behavior, nor did she describe fearing Fred would hurt himself or others prior to going to Cascade.

4.26     Officer Beecher stated the Fred was escorted into the hospital and immediately placed onto the hospital gurney and placed into leg and arm restraints and she moved to grab Fred's left leg to forcibly restrain him and Fred directed his knee toward her; Beecher stated that Officer Adkins and Officer S. Kinney then grabbed each of Fred's legs to prevent him from injuring himself or anyone else.

4.27     Officer Seth. Kinney appears to arrive at the incident when Fred was brought to Cascade Valley Hospital, but as no report from Officer Kinney was produced it is unclear when he arrived.

4.28     Officer Kinney rode in the cruiser with Officer Adkins to take Fred to book in Marysville Jail, thus he likely participated in removal of blood and urine from Fred.

4.29     Cascade Emergency Department Attending/Admitting doctor Dennis Miller admitted Fred Madrid at 7:08 p.m. and reported the chief complaint as "bizarre behavior/clear for jail."

4.30     Defendant Officer Adkins told Dr. Miller to admit Fred due to "bizarre behavior/ clear for jail."

4.31     Dr. Miller ordered an ECG which was taken at 7:20, as a matter of general practice.

4.32     Dr. Miller found on immediate examination and observation "no fever, no tremors, no seizure, not confused, no injury no headaches no complaints no headache, no

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 10

*Marsh & Bennetts, PLLC*
3614 California Ave.
SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

complaints, no dizziness, no chest pain no joint pain no difficulty walking and all systems

otherwise negative." On physical exam Dr. Miller found "no respiratory distress."

4.33    At 7:30 pm Fred withstood a forced blood draw with took two punctures of the

needle on Fred's skin to take his blood taken by either Dr. Miller and/or Ekaterina Koroleva, P.A.

4.34    According to hospital records, not only was did the Defendants herein (except

City of Arlington) work together to forcefully take Fred's blood, only second later, Fred had to

withstand an extremely painful forced catheterization also carried out by Defendants.

4.35    The Cascade Valley Hospital Lab report showed the Urine "negative for all the

drug automatically screened, such as benzodiazepine, cocaine, amphetamines, operates, ecstasy,

etc.;" the urine test was a "qualitative" drug screen only showing if a substance was there, no

how much, used as a "screening test for drug overdose and abuse."

4.36    Ten minutes after Fred withstood the painful and demeaning abuse of the both

forced extractions of his blood and urine, P.A. Ekaterina Koroleva ordered a Portable chest x-ray

that was taken at 7:40 p.m. due to "chest pain," which had not been previously noted and it came

back negative.

4.37    At 8:44 p.m. the qualitative Urine Drug Screen results showed Fred had none of

the several drugs it detects in his system.

4.38    At 9:24 p.m. the blood screen result returned showing Fred's ethanol alcohol at .

245. Not until the tests came back, did P.A. Koroleva summarize Fred's experience at the

hospital as "patient in 4 point restraints in police custody, swearing at staff and being very

threatening, Arlington PD at bedside, having to calm patient down," and "no signs of positive

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

utox [urine toxicology screen] at this time, may be other indicators such as his behavior that

other drug use such as spice/ not something apparent on u-tox could be positive."

       4.39    Fred's discharge papers stated:

> Thank you for visiting the Cascade Valley Hospital-E.R. You have been evaluated
> today by Koroleva, Edaterina, P.A.-C for the following conditions(s): Substance
> abuse. Cleared for jail. The following test(s) and/or procedure(s) were performed
> during your visit today. Laboratory Tests: Cardiac Panel, Ethyl Alcohol, Urine
> Screen, Diagnostic Studies: Chest 1V; Procedures: Urinary catheter. Instructions:
> Cleared for jail. Additional Information: Alcohol Intoxication: Alcohol
> intoxication occurs when you drink alcohol faster than your liver can remove
> it . . . Home Care: Do not drink any more alcohol. DO NOT DRIVE until all
> effect of the alcohol have worn off. . . .

       4.40    Finally, Officer Adkins and Officer Kinney drove Fred to book him into

Marysville Jail and referred him for new charges of Attempted Assault, Harassment, and

interfering with a health care facility, and also booked him on two warrants from Marysville and

a DUI warrant out of Lewis County. Fred was booked at approximately 11:51 p.m.

       4.41    At all times relevant herein, Cascade Valley Hospital staff, including P.A.

Koroleva and Dr. Miller, and other John Doe defendants, acted in their individual and

professional capacities and as instruments or agents of the state, and acted for purposes other

than medical, when they performed the medical procedures of strapping Fred to a bed/gurney,

forcibly extracting blood, and extracting his urine with a catheter.

       4.42    At all times relevant herein, Cascade Valley Hospital staff, including P.A.

Koroleva and Dr. Miller, and other John Doe defendants, when working on Fred Madrid used

improper procedure, failed to exercise the standard of care for provision of services to justice-

involved individuals.

*Marsh & Bennetts, PLLC*
3614 California Ave.
SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

4.43     At all times relevant herein, Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, when working on Fred Madrid, should have ensured there was a lawful order by a court to proceed with forced blood draw and catheterization because intervention was performed for law enforcement purposes rather than to provide diagnosis or treatment of the patient and thus would not be viewed as a health care service.

4.44     At all times relevant herein, Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, when working on Fred Madrid, failed to follow hospital policies that address both the legal authority for such interventions, as well as the specific criteria that must be met prior to carrying out such requests or directives from law enforcement."

4.45     At all times relevant herein, Cascade Valley Hospital was a public hospital under management of Skagit Valley Reagonal Health.

4.46     Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, did not discuss treatment options, diagnosis, or Fred Madrid's rights as a patient before forcefully taking his blood.

4.47     Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, did not discuss treatment options, diagnosis, or Fred Madrid's rights as a patient before forcefully taking his urine.

4.86     Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, forcefully took Fred's blood without a warrant, without implied consent

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

due to a driving situation, without exigent circumstances explained by officers or obvious,

without medical necessity.

4.87    Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other

John Doe defendants, stripped Fred of his pants and underwear, held Fred's legs apart, and

forced a catheter into his penis against his will and took urine without his consent, without a

warrant, and without exigent circumstances, and even though they already had his blood.

4.88    Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other

John Doe defendants, did not verify, and/or negligently relied upon false information or

impression provided by Defendant Officers regarding Fred Madrid's condition, treatment, lack of

consent for treatment, lack of warrant to extract bodily fluids, and lack of exigent circumstances.

4.89    Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other

John Doe defendants, did not verify, or negligently relied upon false information or impression

provided by Defendant Officers regarding Fred Madrid's condition, treatment, lack of consent

for treatment, lack of warrant to extract bodily fluids, and lack of signed waiver, and lack of

exigent circumstances.

4.90    Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other

John Doe defendants, failed to have Fred sign a hospital waiver of his rights not to have blood or

urine taken.

4.91    At all times relevant herein, Cascade Valley Hospital, Cascade Valley Hospital

staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, were required to

follow the dictates of Health Insurance Portability and Accountability Act of 1996 (HIPAA).

*Marsh & Bennetts, PLLC*
3614 California Ave.
SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

4.92    At all times relevant herein, Cascade Valley Hospital, Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, violated federal HIPAA law by disclosing private information about Fred's care and health while he was treated, including, but not limited to, the results of his blood test and the results of his urine test.

4.93    At all times relevant herein, Cascade Valley Hospital, Cascade Valley Hospital staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, violated federal HIPAA law by conversing with police about Fred's care and treatment.

4.94    Defendant Officers and City of Arlington failed to produce any audio or video of the hours-long encounter with Fred at his brother's home, in the police vehicle, in the hospital, or in the ride to jail.

4.95    As a direct and proximate result of the fault of the Defendants named herein, Fred Madrid sustained painful injuries to the wall of his urethra, bladder and penis, as well as minor injury to his wrists and ankles; he also experienced painful urination for weeks.

4.96    As a direct and proximate result of the fault of the Defendants named herein, Plaintiff Fred Madrid suffered severe mental anguish, anxiety, embarrassment, leading to depression, more drinking, housing loss and job loss.

4.97    On the date and time in question, according to the Snohomish County Superform ("Superform") subsection "Suspect's Vehicle Info.," the form filled out by Officer Lucas Adkins (#1163), and/or John Doe noted: "Accident: No; BAC reading: Blood Draw;" there was no other information under Suspect's Vehicle, as there was no vehicle involved whatsoever around Fred's arrest.

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 15

*Marsh & Bennetts, PLLC*
3614 California Ave.
SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

4.98    On the date and time in question, according to the Superform subsection "Alcohol Influence:" indicated "yes" "drug influence: yes."

4.99    On the date and time in question, according to the Superform subsection "Health & Safety," indicated: "Auto Accident: __; Contagious __; Mental Issues __; Chronic Health Issues __; Injured __; Suicidal __; Other __."

4.100    On the date and time in question, according to the Superform subsection "Offense Data," under "Were Drugs Involved in this Incident? Yes. If Yes, List drugs Type: Possibly Meth;" and under "Was Alcohol Involved in this Incident? Yes. If Yes, Explain: Had Been Drinking."

4.101    On the date and time in question, according to Superform subsection "Objection to Release," the form noted under "Danger/Threat to Community if Released: No;" noted under "Physical Injury to Victim, Witness, Officer: No;" noted under "Committed a Crime While Another Case Pending: No."

4.102    On October 24, 2016, at 22:01 hours, Fred was booked into Marysville City Jail for "Probable Cause" in "Secure Detention." The Booking Card for Fred's booking on the instant date and time above indicated probable cause for Assault 3 Attempt (Strong-arm Police Officer); Harassment; Interfere with Health Care Facility.

4.103    On the date in question, Officer Adkins unreasonably, unnecessarily, negligently, recklessly and with deliberate indifference to Fred's rights ordered, requested, and/or pressured medical staff to perform against Fred's will the blood extraction by needle and urine extraction by catheterization.

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
Seattle, Washington  98116
Tel: (206) 683-3466
stacey@marshbennettslaw.com

4.104   On the date in question, Officer Beecher unreasonably, unnecessarily, negligently, recklessly and with deliberate indifference to Fred's rights ordered, requested, and/or pressured medical staff to perform against Fred's will the blood extraction by needle and urine extraction by catheterization.

4.105   On the date in question, Officer Kinney unreasonably, unnecessarily, negligently, recklessly and with deliberate indifference to Fred's rights ordered, requested, and/or pressured medical staff to perform against Fred's will the blood extraction by needle and urine extraction by catheterization.

4.106   On the date in question, Defendant Dr. Miller unreasonably, unnecessarily, negligently, recklessly and with deliberate indifference to Fred's rights succumbed to the order, request, and/or pressure from one or all of the Defendant Officers to order and/or perform against Fred's will the blood extraction by needle and urine extraction by catheterization.

4.107   On the date in question, Defendant P.A. Koroleva P.A.-C unreasonably, unnecessarily, negligently, recklessly and with deliberate indifference to Fred's rights succumbed to the order, request, and/or pressure from one or all of the Defendant Officers to order and/or perform against Fred's will the blood extraction by needle and urine extraction by catheterization.

## V.      CLAIMS
### FIRST CAUSE OF ACTION
**(Federal Civil Rights Violation Under 42 U.S.C. § 1983)**

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

5.1     By virtue of the facts set both above, Defendants are liable for compensatory and punitive damages for deprivation of civil rights of Plaintiff Frederic Madrid, as guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable searches and seizures of his person, by excessively forceful extraction of his blood and urine. The excessive force included, restraining Fred, forcibly removing this clothes, forcibly taking his blood, followed by the barbaric holding of Fred's legs so a catheter could be forcibly inserted into his penis to remove urine.

5.2     By virtue of the facts set both above, Defendants are liable for compensatory and punitive damages for deprivation of civil rights of Plaintiff Frederic Madrid, as guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable searches of his person after his arrest, in this case excessively extraction of his blood and urine extracted in the outrageous manner described above.

5.3     By virtue of the facts set both above, Defendants further deprived Fred of his 9th and 14th Amendment privacy rights when police were allowed to take part in his medical actions.

5.4     As a direct and proximate result of the Defendants' action, Fred suffered sever emotional and physical injuries including, but not limited to: pain and marks on wrists and ankles, tearing and abrasion inside the penis, urethra, prostate and bladder; and suffering anxiety, mental and emotional damage and distress, and impairment of enjoyment of life.

*Marsh & Bennetts, PLLC*
3614 California Ave.
SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

5.5    By virtue of the facts set forth above, Defendants are liable for compensatory and punitive damages for the deprivation of the civil rights of Fred Madrid as guaranteed by the Fourth, Fourteenth, and Ninth Amendments to the U.S. Constitution.

## SECOND CAUSE OF ACTION
**(Federal Law Claim)**

5.6    By virtue of the facts set forth above, Defendants Cascade Valley Hospital, and staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, failed to follow federal, HIPPA, 4th and 14th Amendment to U.S. Constitution, all of which address both the legal authority for such interventions and patient's rights to privacy when they forcibly took blood and urine samples from Fred.

## THIRD CAUSE OF ACTION
**(State Law Claim)**

5.7    By virtue of the facts set forth above, Defendants are liable to Plaintiff Frederic Madrid for compensatory damages for the tort of outrage.

## FOURTH CAUSE OF ACTION
**(State Law Claim)**

5.8    By virtue of the facts set forth above, Defendants Cascade Valley Hospital, and staff, including P.A. Koroleva and Dr. Miller, and other John Doe defendants, failed to follow hospital policies that address both the legal authority for such interventions, as well as the specific criteria that must be met prior to carrying out such requests or directives from law enforcement per RCW 90.56.560 and RCW 46.61.513.

## FIFTH CAUSE OF ACTION
**(State Law Claim)**

*Marsh & Bennetts, PLLC*
3614 California Ave. SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com

5.9     By virtue of the facts set forth above, the Defendants are liable to Plaintiff Frederic Madrid for compensatory damages for negligence for his injuries, both physical and emotional.

## SIXTH CAUSE OF ACTION
### (State Law Claim)

5.10    By virtue of the facts set forth above, the Defendants are liable to Plaintiff Frederic Madrid for compensatory damages for negligence for infliction emotional distress, battery and assault.

## SEVENTH CAUSE OF ACTION
### (State Law Claim)

5.11    Concerning the incident on October 24, 2016, involving Fred Madrid at all times described herein, Defendant City of Arlington failed to meet their burden in promptly producing all public records requested, in violation of RCW 42.56 *et seq*.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Frederic Madrid requests relief as follows:

6.1     Compensatory damages;

6.2     Punitive damages from the individual Defendants on Plaintiff's claims under 42 U.S.C. § 1983;

6.3     Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and to the extent otherwise permitted by law;

6.4     Disclosure and production of all non-exempt documents and information requested in Plaintiff's public records requests that have not been produced;

CIVIIL RIGHTS COMPLAINT FOR DAMAGES
PAGE 20

6.5     Penalties awarded to Plaintiff Frederic Madrid under RCW 42.56.550(4);

6.6     Reasonable attorneys' fees and costs under RCW 42.56.550(4) and to the extent otherwise permitted by law;

6.7     Such other relief as may be just and equitable.

Respectfully submitted this 23rd day of October, 2019.

By:  *s/Stacey L. Bennetts*
     Stacey L. Bennetts, WSBA #25836
And:  *s/Shannon Marsh*
     Shannon Marsh, WSBA #20826
     Attorneys for Plaintiff

*Marsh & Bennetts, PLLC*
3614 California Ave.
SW, #220
SEATTLE, WASHINGTON  98116
TEL: (206) 683-3466
stacey@marshbennettslaw.com